**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAN DONNAWELL, Derivatively on Behalf of Nominal Defendant DEVRY EDUCATION GROUP INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR, LISA W. WARDELL, and ALAN G. MERTEN, )<br><br>Defendants, )<br><br>and )<br><br>DEVRY EDUCATION GROUP INC., )<br><br>Nominal Defendant. ) | **Case No. _____** |

**VERIFIED DERIVATIVE COMPLAINT**

Plaintiff Jan Donnawell ("Plaintiff"), by her undersigned attorneys, submits this Verified Derivative Complaint against the defendants named herein, and alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, a review of public filings, press releases and reports, and investigation undertaken by Plaintiff's counsel, as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this action derivatively on behalf of DeVry Education Group Inc. ("DeVry" or the "Company") against certain of DeVry's current and former executive officers

and members of its Board of Directors (the "Board") seeking to remedy defendants' breaches of fiduciary duties and other violations of law.

2.      In gross breach of their fiduciary duties as directors of the Company, the members of the Board's Compensation Committee (the "Compensation Committee") knowingly granted, and the independent members of the Board (the "Independent Directors") knowingly approved, awards of stock options to DeVry's President and Chief Executive Officer ("CEO") Daniel Hamburger ("Hamburger") in deliberate violation of the Company's Incentive Plan of 2005 and Amended and Restated Incentive Plan of 2005 (collectively, the "2005 Plan").

3.      The 2005 Plan allows the Compensation Committee to grant cash incentives and equity awards, including stock options, to executive officers, employees and directors of the Company.  The Independent Directors approve all compensation decisions for defendant Hamburger, including equity grants under the 2005 Plan.  While these directors have the authority to make and approve equity awards to the CEO under the 2005 Plan, their discretion in exercising such authority is not unlimited.  Rather, the 2005 Plan, as approved by DeVry's stockholders, specifically prohibits the award of stock options relating to more than 150,000 shares of DeVry common stock to any one person in any fiscal year.[1]

4.      In blatant violation of this limit, in 2008, 2010, 2011 and 2012, the Compensation Committee granted, and the Independent Directors approved, awards of stock options to defendant Hamburger for more than 150,000 shares of DeVry common stock.  Specifically, on August 28, 2008, August 27, 2010, August 24, 2011 and August 29, 2012, the Compensation Committee granted and the Independent Directors approved awards of 195,200, 184,100, 170,200, and 255,425 stock options, respectively, to defendant Hamburger.

---

[1] Originally, the limitation applied to awards made to any one person in any calendar year.  The limitation was amended in 2010 to apply to awards made to any one person in any fiscal year.

5.      On or about December 17, 2012, defendant DeVry filed with the SEC numerous amended Form 4s in which it was disclosed that the Board rescinded all of Hamburger's excess awards for 2008, 2010, and 2011.

6.      With regard to Hamburger's excess award for 2012, however, the Board rescinded only 17,515 stock options on the basis that 87,910 of the 255,425 options awarded to Hamburger (the "87,910 Options") purportedly were awarded not under the 2005 Plan, but instead under DeVry's Stock Incentive Plan of 2003 (the "2003 Plan"), and therefore did not count against the 2005 Plan's 150,000 share limit.

7.      At the time the original award of 255,425 options to defendant Hamburger was made on August 29, 2012, neither the Independent Directors nor the Compensation Committee designated any portion of the award as having been made under the 2003 Plan nor had any intention of doing so.  Indeed, they had not made a single award to any executive under the 2003 Plan since 2007 and had no reason to do so on August 29, 2012.

8.      DeVry's proxy statement for its 2013 annual stockholders' meeting (the "2013 Proxy"), filed with the Securities and Exchange Commission ("SEC") on October 7, 2013, confirms that no portion of the original August 29, 2012 award to Hamburger was granted pursuant to the 2003 Plan.  In the 2013 Proxy the Company states that *after* determining that certain options granted to Hamburger in 2012, *i.e.*, certain of the options granted on August 29, 2012, exceeded the 150,000 share limit of the 2005 Plan, DeVry determined that it "was able to use 87,910 shares available under the DeVry 2003 Incentive Stock Plan (the "2003 Plan") to fulfill part of the [original award]."

9.      Although defendants contend that the 87,910 Options were granted pursuant to the 2003 Plan, these options were not, and could not have been, properly granted under the 2003

Plan because defendants did not and could not meet the 2003 Plan's requirements for making the grant.

10.     The 2003 Plan states that "[t]he authority to manage and control the operation and administration of the [2003] Plan shall be vested in the Plan Committee," and specifically provides that the Plan Committee "shall consist of members of the Company's Board of Directors who are full-time, salaried employees of the Company."  At all relevant times, however, the Board consisted of only one "full-time, salaried employee[] of the Company": defendant Hamburger.  Moreover, the 2003 Plan specifically limits the number of shares that can be granted to members of the Plan Committee to 500.  Hence, if Hamburger in fact had served as the sole member of the Plan Committee (which he did not), he would have been limited to a grant of 500 options.

11.     In reality, at the time the 87,910 Options were purportedly granted to Hamburger under the 2003 Plan *there was no Plan Committee at all*.  Thus, *no one* had authority to grant *any* options under the 2003 Plan.

12.     By purportedly granting the 87,910 Options to Hamburger under the 2003 Plan, the then-Independent Directors knowingly and deliberately violated the plain terms of the 2003 Plan, which vests sole granting authority in the then-non-existent Plan Committee.  In short, the Independent Directors exceeded their authority under the 2003 Plan by making a grant they had no authority to make.

13.     Moreover, notwithstanding that the Independent Directors did not purport to grant the 87,910 Options to Hamburger under the 2003 Plan until sometime in December 2012, when the market price of DeVry stock was in excess of $24 per share, the 87,910 Options still retained the $18.60 exercise price of the original August 29, 2012 grant, which was equal to the closing

price of DeVry stock on the NYSE on August 29, 2012. Hence, the Independent Directors deliberately "backdated" the exercise price of the 87,910 Options granted in December 2012 to the August 29, 2012 price of $18.60, which was not and could not have been a good faith determination of the fair market value of DeVry stock on the date the grant was actually made in December 2012.

14. Through this action, Plaintiff seeks to recover for the Company the damages caused by the misconduct alleged herein.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) in that Plaintiff and Defendants are citizens of different states, and with respect to certain of the Defendants, of foreign states, and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive action designed to confer jurisdiction on a court of the United States which it would not otherwise have.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because nominal defendant DeVry is headquartered in this District. In addition, a substantial portion of the occurrences complained of herein occurred in this District and one or more of the Defendants either resides in, or maintains offices in, this District.

## PARTIES

17. Plaintiff is a stockholder of DeVry, was a stockholder of DeVry at the time of the wrongdoing alleged herein, and has been a stockholder of DeVry continuously since that time. Plaintiff is a citizen of the State of Texas.

18. Nominal defendant DeVry is a Delaware corporation with its principal place of business located at 3005 Highland Parkway, Downers Grove, Illinois, and thus is a citizen of

Delaware and Illinois. Shares of DeVry's common stock are traded on the NYSE under the ticker symbol "DV." According to its public filings, DeVry is "a global provider of educational services" and its "institutions offer a wide array of programs in business, healthcare and technology and serve students in secondary through postsecondary education as well as accounting and finance professionals."

19. Defendant Hamburger has served as President, CEO, and a director of DeVry since November 2006. Upon information and belief, defendant Hamburger is a citizen of the State of Illinois.

20. Defendant Christopher B. Begley ("Begley") has served as a director of DeVry and as a member of the Compensation Committee since November 2011. Upon information and belief, defendant Begley is a citizen of the State of Illinois.

21. Defendant David S. Brown ("Brown") has served as a director of DeVry since November 1987. Upon information and belief, defendant Brown is a citizen of the State of Illinois.

22. Defendant Connie R. Curran ("Curran") has served as a director of DeVry since November 2003, Chairwoman of the Board since November 2013 and as a member of the Compensation Committee since 2010. Upon information and belief, defendant Curran is a citizen of the State of Illinois.

23. Defendant Darren R. Huston ("Huston") has served as a director of DeVry since November 2009. Upon information and belief, defendant Huston is a citizen of the Netherlands.

24. Defendant William T. Keevan ("Keevan") served as a director of DeVry from November 2005 and as a member of the Compensation Committee from 2010 until his

resignation in November 2013.  Upon information and belief, defendant Keevan is a citizen of the State of Maryland.

25.     Defendant Lyle Logan ("Logan") has served as a director of DeVry since November 2007.  Upon information and belief, defendant Logan is a citizen of the State of Illinois.

26.     Defendant Fernando Ruiz ("Ruiz") has served as a director of DeVry since November 2005 and as a member of the Compensation Committee since November 7, 2012. Upon information and belief, defendant Ruiz is a citizen of the State of Michigan.

27.     Defendant Harold T. Shapiro ("Shapiro") served as a director of DeVry from November 2001 and as Chairman of the Board since November 2008 until his resignation in November 2013.  Upon information and belief, defendant Shapiro is a citizen of the State of New Jersey.

28.     Defendant Ronald L. Taylor ("Taylor") has served as a Senior Advisor to DeVry since November 2006 and as a director of DeVry since November 1987.  Previously, he served as DeVry's CEO from July 2004 to November 2006 and as its President and Chief Operating Officer from August 1987 to November 2002.  Upon information and belief, defendant Taylor is a citizen of the State of Illinois.

29.     Defendant Lisa W. Wardell ("Wardell") has served as a director of DeVry since November 2008.  Upon information and belief, defendant Wardell is a citizen of the State of Maryland.

30.     Defendant Alan G. Merten ("Merten") has served as a director of DeVry since November 7, 2012.   Upon information and belief, defendant Merten is a citizen of the Commonwealth of Virginia.

31.     The defendants identified in paragraphs 19-30 are referred to collectively herein as the "Individual Defendants."  Prior to November 7, 2012, the "Independent Directors" were defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, and Wardell. Since November 7, 2012, the "Independent Directors" have been defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell, and Merten.

<u>**DUTIES OF THE INDIVIDUAL DEFENDANTS**</u>

32.     By reason of their positions as officers and/or directors of DeVry and because of their ability to control the business and corporate affairs of DeVry, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of DeVry and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of DeVry owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

33.     To discharge their duties, the Individual Defendants, as officers and directors of the Company, were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the Individual Defendants were required to, among other things:

> a.     exercise good faith to ensure that the affairs of the Company were conducted in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business;
>
> b.     exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules and regulations and requirements and the Company's

governing documents, *e.g.*, the 2003 Plan and 2005 Plan, including acting only within the scope of their legal authority; and

c.  refrain from wasting the Company's assets or otherwise unduly benefiting themselves and other Company insiders at the expense of the Company.

## SUBSTANTIVE ALLEGATIONS

### The 2003 and 2005 Plans

34.  The 2003 Plan, which DeVry's stockholders approved at the Company's annual meeting on November 18, 2003, authorized the granting to Company personnel of options to purchase up to 2,000,000 DeVry shares.  According to the 2003 Plan, "[t]he authority to manage and control the operation and administration of the Plan shall be vested in the Plan Committee, subject to approval by the Compensation Committee of the Board of Directors."  The 2003 Plan further provides that "[t]he Plan Committee shall consist of members of the Company's Board of Directors who are full-time, salaried employees of the Company."

35.  Two years later, when DeVry had used roughly half of the 2,000,000 options authorized under the 2003 Plan, the Board adopted the 2005 Plan, which the Company's stockholders approved at DeVry's annual meeting on November 9, 2005.  The Board subsequently amended the 2005 Plan, and DeVry's stockholders approved the amendments at DeVry's annual meeting on November 10, 2010.

36.  The 2005 Plan, as amended in 2010, authorizes the granting of 6,000,000 shares in the form of, among other things, stock options.  The stated purpose of the 2005 Plan is "(i) to encourage outstanding individuals to accept or continue employment with DeVry Inc… and its subsidiaries or to serve as directors of DeVry, and (ii) to furnish maximum incentive to those persons to improve operations and increase profits and to strengthen the mutuality of interest between those persons and DeVry's stockholders by provided them stock options and other stock and cash incentives."

37. The 2005 Plan provides for awards to employees, officers and directors of DeVry in the form of stock options, stock appreciation rights, restricted stock, restricted stock units, performance stock, performance cash awards, annual management incentive awards and other stock or cash awards.

38. The 2005 Plan is administered by the Compensation Committee, and, as stated in the Company's proxy statements, the Compensation Committee "made all final compensation decisions with respect to long term incentive grants to NEOs other than Mr. Hamburger. The independent members of the Board approved all compensation decisions for Mr. Hamburger," including the stock options granted pursuant to the 2005 Plan.

39. The 2005 Plan expressly limits the equity awards that may be granted thereunder. The original version of the 2005 Plan stated that "[u]nder the Plan, no participant may receive in any calendar year (i) Stock Options relating to more than 150,000 shares, (ii) Restricted Stock or Restricted Stock Units relating to more than 50,000 shares, (iii) Stock Appreciation Rights relating to more than 125,000 shares, or (iv) Performance Shares relating to more than 50,000 shares."

40. The amended and restated version of the 2005 Plan contains the same limitations, except that such limits apply to the awards that can be made to any one participant in any fiscal year, instead of any calendar year. DeVry's fiscal year ends on June 30th.

41. No awards of compensation have been made to any executive officers under the 2003 Plan since 2007.

**Defendants' Violations of the 2005 Plan**

42. Despite the 2005 Plan's clear limit of 150,000 stock options per person per fiscal year, the Company's public filings disclose that in August of 2008, 2010, and 2011, the

Compensation Committee granted, and the Independent Directors approved, awards of stock options to defendant Hamburger, purportedly pursuant to the 2005 Plan, as follows:

| Grant Date | Stock Options Granted |
|---|---|
| August 28, 2008 | 195,200 |
| August 27, 2010 | 184,100 |
| August 24, 2011 | 170,200 |

43.     The August 28, 2008 award exceeded the 150,000 share limit for calendar year 2008 by 45,200 shares; the August 27, 2010 award exceeded the 150,000 share limit for calendar year 2010 by 34,100 shares; and the August 24, 2011 award exceeded the 150,000 share limit for fiscal year 2012 by 20,200 shares.

44.     The members of the Compensation Committee and the Independent Directors knew the 2005 Plan limited stock option awards to 150,000 shares per person per year, yet they deliberately violated this limit by granting and approving the foregoing excessive awards to defendant Hamburger.

**The 2012 Award to Defendant Hamburger**

45.     In addition to the foregoing violations of the 2005 Plan, on August 29, 2012, Compensation Committee members Begley, Curran, Keevan, and Julia A. McGee ("McGee") granted, and Independent Directors Begley, Curran, Keevan, McGee, Brown, Huston, Logan, Ruiz, Shapiro and Wardell approved, an award to defendant Hamburger of 255,425 stock options.

46.     At the time the award of 255,425 options to defendant Hamburger was made on August 29, 2012, neither the Independent Directors nor the Compensation Committee designated any portion of the award as having been made under the 2003 Plan nor had any intention of doing so. Indeed, they had not made a single award under the 2003 Plan since 2007 and had no

reason to do so on August 29, 2012, as at that time there were more than 3,000,000 shares available under the 2005 Plan.

47.     On August 31, 2012, Hamburger filed with the SEC a Form 4 reporting his receipt of the 255,425 options awarded on August 29, 2012.  Notably, the Form 4 did not identify any of the options as having been awarded under the 2003 Plan.

48.     According to DeVry's 2012 Proxy Statement, as of June 30, 2012, there remained 98,110 shares available under the 2003 Plan.  It would have made no sense for the Independent Directors or the Compensation Committee two months later to award Hamburger the 87,910 Options under the 2003 Plan, leaving 10,200 shares available under the 2003 Plan.

49.     The truth is that the Independent Directors did not designate the 87,910 Options as having been awarded under the 2003 Plan until months after August 29, 2012.

### Defendants Rescind Certain of Hamburger's Grants

50.     On December 17, 2012, DeVry filed with the SEC amended Form 4 filings with regard to Hamburger's 2008, 2010, 2011, and 2012 stock option awards stating the that the Board had rescinded certain portions of those awards.

51.     Hamburger's amended Form 4 with regard to his 2008 options award stated:

> As previously reported on a Form 4 filed on September 2, 2008 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 45,200 shares of common stock were not validly granted pursuant to the DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

52.     Hamburger's amended Form 4 with regard to his 2010 options award stated:

As previously reported on a Form 4 filed on August 31, 2010 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 34,100 shares of common stock were not validly granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they, together with 2,584 Incentive Stock Options granted simultaneously with the NQSOs, exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

53.     Hamburger's amended Form 4 with regard to his 2011 options award stated:

As previously reported on a Form 4 filed on August 26, 2011 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 20,200 shares of common stock were not validly granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they, together with 2,388 Incentive Stock Options granted simultaneously with the NQSOs, exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

54.     Thus, the Board rescinded all of Hamburger's excess awards for 2008, 2010, and 2011.

**Defendants Falsely Rescind Hamburger's 2012 Grant,
and Violate the 2003 Plan in the Process**

55.     Unlike the amended Form 4 filings with regard to Hamburger's 2008, 2010, and 2011 awards, the amended Form 4 with regard to Hamburger's 2012 award did not acknowledge the full extent to which that award exceeded the 150,000 shares per person limit.  Rather, the amended Form 4 with regard to Hamburger's 2012 award claimed that:

As previously reported on a Form 4 filed on August 31, 2012 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase 250,049 shares of common stock. However, DeVry Inc. subsequently determined that, after issuing NQSOs to purchase 87,910 shares of common stock under DeVry Inc.'s 2003 Stock Incentive Plan (with all NQSOs in excess of such amount to be granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan (the "2005 Plan")), NQSOs to purchase 17,515 shares of common stock were not validly granted pursuant to the 2005 Plan because they, together with 5,376 Incentive Stock Options granted simultaneously with the NQSOs under the 2005 Plan, exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

56.     The amended Form 4 with regard to Hamburger's 2012 award falsely and misleadingly implied that the 87,910 Options purportedly awarded under the 2003 Plan had been designated as such when the options were originally granted on August 29, 2012, rather than in December 2012, when the Independent Directors actually designated the 87,910 Options as purportedly having been awarded under the 2003 Plan.

57.     On October 7, 2013, the Company filed the 2013 Proxy with the SEC. The 2013 Proxy confirms that the 87,910 Options were not granted under the 2003 Plan on August 29, 2012. Indeed, according to the 2013 Proxy, *after* determining that Hamburger's stock "option grants in fiscal years 2009, 2011, 2012, and 2013 may have exceeded the 150,000 limit on the number of stock options that may be granted to any individual participant in a fiscal-year period under the 2005 Plan," the Company, "under the oversight of the Compensation Committee," determined that it "was able to use 87,910 shares available under the DeVry 2003 Incentive Stock Plan (the "2003 Plan") to fulfill part of the Compensation Committee's original intentions,

leaving 17,515 stock options still unfulfilled for the 2013 fiscal year[.]" The full text of the relevant disclosure in the 2013 Proxy is as follows:

> As part of his overall compensation package for fiscal year 2013, the independent directors, upon the recommendation of the Compensation Committee, approved Long-Term Incentive (LTI) compensation for Mr. Hamburger valued at $3,500,000, consisting of 60% stock options, 25% Performance Shares, and 15% Full Value Shares to be granted under any of DeVry's currently maintained equity compensation plans. DeVry attempted to implement Mr. Hamburger's stock option grant under the DeVry Inc. Amended and Restated 2005 Incentive Plan (the "2005 Plan") and filed on his behalf a report on Form 4 indicating that Mr. Hamburger had acquired 255,425 stock options. It subsequently came to DeVry's attention that Mr. Hamburger's stock option grants in fiscal years 2009, 2011, 2012, and 2013 may have exceeded the 150,000 limit on the number of stock options that may be granted to any individual participant in a fiscal-year period under the 2005 Plan. Mr. Hamburger had not exercised any of the stock options in question.

> The matter was investigated by a cross-functional DeVry working group, advised by external counsel and working in coordination with DeVry's external auditors, all under the oversight of the Compensation Committee. This group concluded that any stock options purportedly granted under the 2005 Plan in excess of the 150,000 annual stock option limit were, in fact, unfulfilled, as such awards were null and void under the express terms of the 2005 Plan. Accordingly, DeVry filed on Mr. Hamburger's behalf amended reports on Form 4 stating that he had not, in fact, acquired more than 150,000 stock options under the 2005 Plan in fiscal year 2013 or in any of the preceding years in question. With respect to the implementation of Mr. Hamburger's fiscal year 2013 stock option grant, DeVry was able to use 87,910 shares available under the DeVry 2003 Incentive Stock Plan (the "2003 Plan") to fulfill part of the Compensation Committee's original intentions, leaving 17,515 stock options still unfulfilled for the 2013 fiscal year, as reflected in the following table.

58. Thus, as disclosed in the 2013 Proxy, the Independent Directors first determined that Hamburger's August 29, 2012 award violated the 2005 Plan, and **then** determined to grant the 87,910 Options pursuant to the 2003 Plan. The Individual Defendants other than Hamburger purportedly approved this determination on behalf of DeVry.

59.     Pursuant to the express terms of the 2003 Plan, however, neither the Board, the Compensation Committee, the Independent Directors, nor any other group of directors had the authority to grant *any* options under the 2003 Plan.  Rather, Section 2 of the 2003 Plan vests granting authority only in the Plan Committee, which in December 2012 *did not exist*.

60.     Section 2 of the 2003 Plan provides that the Plan Committee "shall consist of members of the Company's Board of Directors who are full-time, salaried employees of the Company."  None of the current Compensation Committee members or other Individual Defendants other than Hamburger is a "full-time, salaried employee[] of the Company."  Rather, in December 2012 the one DeVry director who was a "full-time, salaried employee[] of the Company" was defendant Hamburger.  Thus, the Compensation Committee, or any Board committee or sub-committee consisting any of the Individual Defendants other than Hamburger, could not act as a *de facto* Plan Committee even if it wanted to.  Rather, in purporting to grant Hamburger the 87,910 Options under the 2003 Plan, the Independent Directors knowingly, deliberately, and in bad faith violated the express terms of the 2003 Plan.

61.     Hamburger could not have served as a one-member Plan Committee to grant the 87,910 Options to himself because Section 4 of the 2003 Plan provides that Plan Committee members shall receive the lesser of 500 shares or "that number of shares equal to the largest multiple of 25 whose fair market value on the date of grant does not exceed $25,000."

62.     Neither Hamburger's December 17, 2012 amended Form 4 nor the 2013 Proxy discloses the date on which the 87,910 Options were purportedly granted.  However, the lowest closing price of DeVry's common stock between August 29, 2012 and December 17, 2012 (the date Hamburger's amended Form 4 was filed) was $23.91 per share.  Thus, even if Hamburger had been appointed to serve as a one-member Plan Committee (and he was not), he could have

only granted himself the lesser of 500 options or a maximum of 1,025 options,[2] *i.e.*, 500 options, not 87,910.

63.     The requirements of the 2003 Plan are documented not only in the 2003 Plan itself, but also in the Company's SEC filings.  For instance, according to the Company's annual proxy statement on Form DEF 14A filed with the SEC on October 10, 2006 (the "2006 Proxy"), former DeVry executive officers Taylor and Dennis J. Keller then served as members of the Plan Committee and on or about July 1, 2005 were granted 500 DeVry stock options pursuant to the 2003 Plan and the Company's 1999 Stock Incentive Plan.  Defendants Brown, Curran, Keevan, Ruiz and Taylor have been members of the Board since 2005 or earlier and approved the 2006 Proxy for filing with the SEC.  Moreover, Taylor is a former member of the Plan Committee established under the 2003 Plan.  Consequently, the Individual Defendants were well aware of the terms of the 2003 Plan and nonetheless deliberately, knowingly and in bad faith violated them.

64.     In addition, the 87,910 Options carry an exercise price of $18.60 per share, the purported fair market value of the options on the date of the original August 29, 2012 grant to Hamburger.  However, assigning the $18.60 per share exercise price to the 87,910 Options constitutes a further violation of the 2003 Plan.

65.     Section 6 of the 2003 Plan provides that the exercise price of all options granted under the 2003 Plan shall be "100% . . . of the Fair Market Value (as defined below) of a share of such Common Stock on the date on which the option is granted."  The 2003 Plan defines "Fair Market Value" to mean "the fair market value of such share determined in good faith by the Plan

---

[2] 1,025 options is calculated as follows: $25,000/$23.91 per share = 1,025 shares, which is "the largest multiple of 25 whose fair market value on the date of grant does not exceed $25,000."

Committee." The 2005 Plan contains similar language defining the "fair market value" for purposes of that plan.

66. DeVry's practice under the 2003 and 2005 Plans has consistently been to grant stock options with exercise prices equal to the closing market price of DeVry's common stock on the date of the grant. Indeed, as the 2013 Proxy expressly states with regard to no less than **40 different** stock option grants made to the Company's senior executives between 2004 and 2012, "[a]ll options were granted at market value on the date of grant based on the closing market price of the Common Stock for such date as reported in *The Wall Street Journal*."

67. Consistent with historical practice, the exercise price of Hamburger's August 29, 2012 option award was $18.60 per share, which is the market price at which DeVry's common stock closed on August 29, 2012.

68. As admitted in the 2013 Proxy, the 87,910 Options were not purportedly granted under the 2003 Plan until long after August 29, 2012. Nevertheless, the 87,910 Options retain the same exercise price as if they were granted on August 29, 2012. This constitutes a further violation of the 2003 Plan because (a) $18.60 was not, and could not have been, "the fair market value of such share determined in good faith by the Plan Committee" because at the time the 87,910 Options were granted in December 2012 there was no Plan Committee; and (b) even if the Independent Directors had the authority to determine fair market value (which they did not), they could not have determined in good faith that the fair market value of the shares was $18.60 because the then-current market price was in excess of $24 per share, more than 30% above the August 29, 2012 market price of $18.60 per share.

69. Indeed, the $18.60 per share exercise price was the **second lowest** closing stock price in calendar year 2012, and demonstrates that the Independent Directors deliberately

determined to retain that exercise price for the 87,910 Options in order to provide Hamburger with a nearly $6.00 per share immediate gain on the options.

70.     The Independent Directors deliberately, knowingly and in bad faith violated the express terms of the 2003 Plan by purportedly granting the 87,910 Options with a "backdated" exercise price of $18.60 per share.

71.     As a direct and proximate result of the Independent Directors' foregoing misconduct, DeVry has sustained damages, including, but not limited to, the value of the improperly granted 87,910 Options.

72.     Moreover, because the Individual Defendants improperly granted the 87,910 Options with an exercise price below the fair market value of the Company's stock price on the date of grant, the Individual Defendants also caused the Company to improperly account for these options when recording the Company's annual compensation expenses.

73.     According to DeVry's annual report on Form 10-K for the fiscal year ended June 30, 2013 (the "FY13 10-K"), DeVry's "[s]tock-based compensation is recorded as compensation expense over the vesting period." The FY13 10-K further states that "[s]tock-based compensation cost is measured at grant date, based on the fair value of the award, and is recognized as expense over the employee requisite service period, reduced by an estimated forfeiture rate." Thus, the higher the fair value of an option award as of the grant date, the higher the compensation expense to DeVry.

74.     The 87,910 Options retained the $18.60 per share exercise price originally attributed to Hamburger's 2012 awards even though the 87,910 Options were not granted until substantially *after* August 29, 2012. The $18.60 per share exercise price was the ***second lowest*** closing stock price in calendar year 2012, and DeVry's stock price only increased from August

29, 2012 until December 14, 2012, the day before Hamburger filed his amended Form 4. Thus, the fair market value of the 87,910 Options was substantially more than $18.60 per share, and Defendants have materially understated DeVry's compensation expense and materially overstated DeVry's net income and earnings for fiscal year 2013.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

75.     Plaintiff brings certain claims in this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

76.     Plaintiff is a stockholder of DeVry, was a stockholder of DeVry at the time of the wrongdoing alleged herein, and has been a stockholder of DeVry continuously since that time.

77.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

78.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

79.     The Board currently consists of ten directors: defendants Begley, Brown, Curran, Hamburger, Huston, Logan, Merten, Ruiz, Taylor and Wardell. The following directors are incapable of independently and disinterestedly considering a demand to vigorously prosecute this action:

>     a.     Defendants Begley, Brown, Curran, Huston, Logan, Merten, Taylor, Ruiz and Wardell because they knowingly, deliberately, and in bad faith violated the terms of the 2003 Plan by (i) granting the 87,910 Options despite their lack of authority to do so, (ii) determining the exercise price of the 87,910 Options despite their lack of authority to do so, and (iii) "backdating" the exercise price of the 87,910 Options to the August 29, 2012 price of $18.60 per share, as alleged in detail herein. These directors are directly interested in the transaction of which Plaintiff complains, which was not, and could not have been, the product of a valid exercise of

business judgment and for which they face a substantial likelihood of liability; and

b. Defendant Hamburger, because he received a personal financial benefit as a result of the improper grant of the 87,910 Options.

80. Demand is also excused because the misconduct complained of herein was not, and could not have been, the product of a good faith exercise of business judgment. On the contrary, defendants Begley, Brown, Curran, Huston, Logan, Merten, Taylor, Ruiz and Wardell knowingly, deliberately, and in bad faith granted the 87,910 Options in contravention of the plain language of the 2003 Plan, which is not and cannot be protected by the business judgment rule.

## COUNT I

### Against Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell and Merten For Breach of Fiduciary Duty

81. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82. As alleged in detail herein, each of the Individual Defendants, by reason of their positions as fiduciaries of the Company, owed to the Company the duties of undivided loyalty and good faith.

83. Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell and Merten breached their fiduciary duties of loyalty and good faith by knowingly, deliberately, and in bad faith violating the terms of the 2003 Plan, as alleged herein.

84. Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell and Merten further breached their fiduciary duties of loyalty and good faith by knowingly, deliberately, and in bad faith approving the grant of "backdated" stock options to defendant Hamburger, as alleged herein.

85.     Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell and Merten further breached their fiduciary duties of loyalty and good faith by knowingly, deliberately, and in bad faith causing the Company to understate its compensation expenses for fiscal year 2013, as alleged herein.

86.     The Company was damaged as a direct and proximate result of defendants Begley, Brown, Curran, Huston, Keevan, Logan, Taylor, Ruiz, Shapiro, Wardell and Merten's foregoing breaches of fiduciary duties, as alleged herein.

## COUNT II

### Against Defendant Hamburger for Unjust Enrichment

87.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

88.     Defendant Hamburger was unjustly enriched by his receipt of the improperly granted 87,910 Options, as alleged herein, and it would be unconscionable to allow him to retain the benefits of these options.

89.     To remedy defendant Hamburger's unjust enrichment, the Court should order him to disgorge to the Company the 87,910 Options.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

a.     Awarding the Company the amount of damages it sustained as a result of the defendants' breaches of fiduciary duties;

b.     Ordering defendant Hamburger to disgorge to the Company the 87,910 Options;

c.     Granting appropriate equitable relief to remedy the defendants' breaches of fiduciary duties;

d.     Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

e.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated:  February 12, 2014

**LASKY & RIFKIND, LTD.**
Norman Rifkind
Amelia S. Newton

 /s/ Norman Rifkind_____
351 W. Hubbard St., Suite 401
Chicago, IL 60654
Tel: (312) 634-0057
Fax: (312) 634-0059

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
James H. Miller
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

*Counsel for Plaintiff*

## **VERIFICATION**

I, Jan Donnawell, hereby verify that I have authorized the filing of the attached Verified Derivative Complaint, that I have reviewed the Verified Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

DATE: 2/12/14

_Jan Donnawell_
Jan Donnawell

# shareBUILDER®



## My Positions

Account [redacted] | Total Account Value [redacted] | Total Investment Balance [redacted] / Top Holdings Chart | Cash Balance (FDIC) [redacted] / Deposit Money

### Stock & ETF Positions

Portfolio Analysis

| Symbol | Description | Quote[1] | Day Change | Quantity | Market Value[1] | Cost / Share | Cost Basis | Gain or Loss[2] | |
|--------|-------------|-------|------------|----------|--------------|--------------|------------|-------------|---|
| AUNFF | AURCANA CORP COM NO PAR | $1.05 | +$0.09 (8.81%) | 3.1250 | $3.28 | $11.71 | $36.60 | -$33.32 (-91.03%) | Trade |
| AXP | AMERICAN EXPRESS CO | $88.93 | +$0.35 (0.40%) | 2.0808 | $185.05 | $50.68 | $105.45 | +$79.60 (75.48%) | Trade |
| CHK | CHESAPEAKE ENERGY CORP | $24.85 | +$0.03 (0.12%) | 15.1559 | $376.62 | $23.80 | $360.68 | +$15.94 (4.42%) | Trade |
| DV | DEVRY INC DEL | $35.41 | +$0.36 (1.03%) | 1.7453 | $61.80 | $68.51 | $119.57 | -$57.77 (-48.31%) | Trade |
| LNG | CHENIERE ENERGY INC | $45.94 | +$1.08 (2.41%) | 7.0000 | $321.58 | $17.88 | $125.17 | +$196.41 (156.91%) | Trade |
| LOGL | LEGEND OIL & GAS LTD | $0.0501 | -$0.001 (-1.96%) | 25.0000 | $1.25 | $2.58 | $64.45 | -$63.20 (-98.06%) | Trade |
| QTRRF | QUATERRA RES INC | $0.0650 | $0.00 (0.00%) | 20.0000 | $1.30 | $2.25 | $44.95 | -$43.65 (-97.11%) | Trade |
| SCEY | SUN CAL ENERGY INC COM | $0.0030 | $0.00 (0.00%) | 13.0000 | $0.0390 | --- | --- | --- | Trade |
| SOIS | STRIKER OIL & GAS INC | $0.0055 | $0.00 (0.00%) | 24.6154 | $0.1354 | $1.22 | $30.00 | -$29.86 (-99.55%) | Trade |
| SRGE | SOUTHRIDGE ENTERPRISES INC | $0.0004 | $0.00 (0.00%) | 0.0010 | $0.0000 | $35,550.00 | $35.55 | -$35.55 (-100.00%) | Trade |
| TAON | TAO MINERALS LTD COM PAR $.001 | $0.0004 | $0.00 (0.00%) | 0.0035 | $0.0000 | $27,142.86 | $95.00 | -$95.00 (-100.00%) | Trade |
| WTER | ALKALINE WTR CO INC COM | $0.1950 | -$0.005 (-2.50%) | 65.0000 | $12.68 | $0.72 | $46.93 | -$34.26 (-72.99%) | Trade |
| ZAZA | ZAZA ENERGY CORP | $0.9300 | +$0.0001 (0.01%) | 10.0000 | $9.30 | $5.45 | $54.45 | -$45.15 (-82.92%) | Trade |

Stock & ETF Totals [redacted] -$145.81 (13.03%)

Total Investment Balance [redacted]

[1] Market value is calculated based on delayed quote data.

[2] Your adjusted cost basis and gain/loss reflect the close of the previous market day. Gain & loss calculations use adjusted cost basis provided by Wolters Kluwer Financial Services Inc. This data is provided as a service and is not a reflection of your tax reporting liabilities. Please visit the Tax Center for more information on your taxable gains or losses.

**Where does this research come from?** See our Research Content Disclosure. **Delayed quotes:** NYSE, NASDAQ and Amex - at least 15 minutes delay. **BATS:** BATS Exchange real-time quotes may be delayed up to 10 minutes compared to a composite real-time